**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 96-4702

CHARLES HENRY EDWARD SMITH, JR.,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CR-96-132)

Submitted: July 22, 1997

Decided: September 10, 1997

Before WILKINS, HAMILTON, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Joseph N. Bowman, Alexandria, Virginia, for Appellant. Helen F.
Fahey, United States Attorney, Michael E. Rich, Assistant United
States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Charles Smith appeals from a district court judgment entered pursuant to a jury verdict finding him guilty of two counts of bank robbery, in violation of 18 U.S.C. § 2113(a) & (d) (1994). Smith contends that the trial court erred by joining the two counts together under Fed. R. Crim. P. 8(a), and denying his motion to sever the charges under Fed. R. Crim. P. 14. He also challenges the sufficiency of the evidence to convict him of either charge.

"Trial courts routinely allow joinder of different bank robbery counts against a single defendant in the same indictment." United States v. Acker, 52 F.3d 509, 514 (4th Cir. 1995). The defendant bears the burden of showing that the joinder was manifestly prejudicial, and the trial court's decision to allow joinder should not be disturbed absent a showing of clear prejudice or abuse of discretion. Id. Where the offenses are strikingly similar in terms of method of operation and occur over a short span of time, the trial court does not abuse its discretion by denying severance. Id.

In this case, the two robberies were only two days apart. Both occurred at suburban banks in Northern Virginia, and the robber was similarly dressed each time. He wore heavy clothing, a hat or hood that partially masked his face, and distinctive large, round eyeglasses. In both robberies, the robber wielded a black, semi-automatic pistol, and on each occasion, witnesses described a getaway car which matched the characteristics of one of two vehicles belonging to Maria Valenzuela, Smith's common law wife. Given the numerous similarities between the two crimes, we find no abuse of discretion in the court's decision to deny the motion for severance.

Regarding Smith's challenges to the sufficiency of the evidence, we ask whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt." United States v. Johnson, 54 F.3d 1150, 1153 (4th Cir. 1995) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We "construe the evidence in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into

2

account all the evidence, however adduced." Id. at 1153 (quoting United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991)).

The evidence adduced at trial relating to the first bank robbery showed that a black male entered the bank in the late morning hours, pulled out a gun, pointed it at a bank teller, and ordered her to put money into a plastic bag he provided. The teller did as instructed, but also placed a dyepack into the bag. A bank customer saw the robber leave the bank and get into an older model gray Toyota or Sentra, and saw a cloud of purple smoke coming from the car shortly after the robber entered the vehicle.

Maria Valenzuela testified that Smith left the apartment they shared on the morning of the robbery around 9:15 a.m., and returned between 1:30 and 2:00 p.m. She testified that he ran into the apartment and then ran immediately to the back bedroom, where he took off his clothes, which smelled, and took a shower. She testified that Smith owned glasses, gloves, and a jacket similar to those that bank surveillance cameras showed were worn by the robber of the first bank. She also noticed that the gloves and jacket she spoke of were missing after the robbery.

On the day of the robbery, police discovered a dye stained clear plastic bag containing some dye stained United States currency near the parking lot of the victim bank. Federal Bureau of Investigation officials found a fingerprint of Smith's right thumb on the bag. When Smith was arrested two days later, law enforcement officials searched a gray 1977 Toyota Corona belonging to Valenzuela and discovered that the vinyl covering of the front passenger seat had been removed.

While Smith contends that the only evidence linking him to the first robbery was his fingerprint on the plastic bag, the totality of the evidence in fact tended to demonstrate Smith's ability to be at the scene of the robbery based on his departure and arrival times from his apartment, that he wore glasses and clothing similar to those of the robber, that he had access to a vehicle matching the characteristics of the getaway car in the first robbery, and that Smith and the vehicle he drove came into contact with the dye that the robber and his vehicle were exposed to after the first robbery. We find this evidence sufficient to support the jury's verdict as to the first robbery.

3

The evidence linking Smith to the second robbery was even stronger. The robber of the second bank wore distinctive eyeglasses similar to those which Valenzuela testified Smith always wore, and carried a gun similar to the one used by the robber of the first bank. A bank customer saw the robber leave the bank and enter his getaway vehicle. The customer wrote down the license plate number and gave it to authorities. The number was issued to a 1987 Mazda owned by Valenzuela. Police found Smith driving the Mazda later in the day of the robbery, and arrested him. Police searched the vehicle and found $12,948 in United States currency and a black pistol in the trunk. Smith also had $1,500 in his wallet at the time of his arrest. Approximately $14,000 was stolen from the second bank.

Although Smith presented a witness at trial who testified that she spoke to Smith at a service station located about 13 to 16 minutes by car from the bank at precisely the time of the robbery, the jury was free to disbelieve this testimony and credit the evidence which strongly linked Smith to the second robbery. Accordingly, the judgment order of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4